UNITED STATES DISTRICT COURT
SOUTHERN DISCTRICT OF NEW YORK

| | |
|---|---|
| DR. DOUGLAS SCHOTTENSTEIN, M.D. and THOMPSON REAL ESTATE, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CITIBANK, N.A.,<br><br>*Defendant.* | **FIRST AMENDED COMPLAINT WITH JURY DEMAND** |

DR. DOUGLAS SCHOTTENSTEIN, M.D. and THOMPSON REAL ESTATE, LLC, plaintiffs herein, by their attorneys, allege and complain of defendant Citibank, N.A., as follows:

## NATURE OF THE ACTION

1. Plaintiff DR. DOUGLAS SCHOTTENSTEIN, M.D. and Plaintiff THOMPSON REAL ESTATE, LLC (which is owned by Dr. Douglas Schottenstein, M.D. and which owns the building in which he resides) (collectively "Plaintiffs" or "Dr. Schottenstein"), is a victim of theft.

2. This action stems from defendant Citibank, N.A.'s ("Citibank" or "Defendant") failure to properly implement security measures and take steps necessary to identify, prevent, and/or remedy three (3) fraudulent wire transfers from Dr. Schottenstein's account that ultimately resulted in the theft of approximately $1,067,906.37.

3. Even though Dr. Schottenstein timely notified Citibank of the fraudulent transfers both in person and in writing, Citibank has refused to refund Dr. Schottenstein for the unauthorized wire transfers.

1

4. Citibank's failure to establish and implement commercially reasonable policies and procedures to avoid, flag and stop unauthorized transfers resulted in Dr. Schottenstein's account being plundered over the course of less than a month of approximately $1,067,906.37.

5. Because Citibank failed in its obligation to secure Plaintiffs' account from unauthorized wire transfers, it is liable for the theft of Plaintiffs' funds.

6. Despite its obligation under the UCC to promptly credit Plaintiff's account in full, Citibank has refused to credit Plaintiffs' account for the stolen funds.

7. Moreover, Citibank's inept response to the unauthorized wire transfers provided the individuals committing the fraud with the opportunity to remove the stolen funds from the accounts to which the funds had been transferred before they could be returned to Dr. Schottenstein's account.

8. To date, Plaintiffs have not recovered or received any of the funds from the Account.

9. Dr. Douglas M. Schottenstein, M.D. recently filed a police report against the criminals who removed the funds.

10. Plaintiffs bring claims against Citibank for violations of New York UCC §§ 4-A.

## JURISDICTION AND VENUE

11. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

12. Venue is proper in this District because Plaintiffs reside in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

13. Plaintiff Dr. Douglas Schottenstein, M.D. is a natural person and citizen of New York residing in New York, New York.

14. Plaintiff Thompson Real Estate, LLC is a New York limited liability company whose sole member, Dr. Douglas Schottenstein, M.D., is a citizen of New York. Accordingly, Thompson Real Estate, LLC is a citizen of New York.

15. Defendant Citibank, N.A. is a national banking association formed under the laws of the United States.

16. Defendant is incorporated in South Dakota as designated in its articles of association.

17. Defendant's principal place of business is in South Dakota.

18. Defendant holds itself out as a citizen of South Dakota, including in pleadings filed in this District and elsewhere. *See Citibank, N.A. v. Tormar Assocs. LLC*, Case No. 15-CV-1932-JPO, 2015 U.S. Dist. LEXIS 155528, at *2, n1 (S.D.N.Y. Nov. 17, 2015); *In re Citibank* August 11, Case No. 20-CV-6539-JMF, 2020 U.S. Dist. LEXIS 226038, at *1 (S.D.N.Y. Dec. 20, 2020); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 74-75 (W.D.N.Y. 2018).

19. Accordingly, Defendant Citibank, N.A. is a citizen of South Dakota.

**FACTS**

**A.   Opening the Account**

20. Plaintiffs opened a checking account for Thompson Real Estate, LLC at a Citibank branch in New York, New York (the "Account") some years ago.

21. At all relevant times, Dr. Douglas Schottenstein, M.D. was the sole representative of Thompson Real Estate, LLC who was authorized to have access to the Account.

**B.   Use of the Account**

22. The Account was used by Plaintiffs to pay the mortgage on Dr. Douglas Schottenstein, M.D.'s residence in New York City.

**C.   The Fraudulent Transfers**

23. In or about February 2020, unauthorized access to the Account was made available by Citibank without the knowledge, consent, or prior authorization of Dr. Schottenstein.

24. From February 2020 and continuing through March 2020, three large outgoing wire transfers were made from the Account, totaling $1,067,906.04, without the knowledge, consent, or approval of Plaintiffs.

25. Notwithstanding that Dr. Schottenstein had no history of outgoing wire transfers from the Account in the past consistent with the amount, proximity or frequency of the unauthorized transfers, and not withstanding that Plaintiffs did not have any history of wiring the individual recipient (a former employee) funds, Citibank did not lock the Account at the time these transfers were initiated and failed to contact Dr. Schottenstein prior to the effectuation of the transfers.

26. On February 20, 2020, an unauthorized transfer in the amount of $429,741.11 was made from the Account to "Derek Lee JPMorgan Chase Bank, NA".

27. On February 28, 2020, an unauthorized transfer in the amount of $319,107.63 was made from the Account to "DL JPMorgan Chase Bank, NA".

28. On March 20, 2020, an unauthorized transfer in the amount of $319,057.63 was made from the Account to "Derek Lee JPMorgan Chase Bank, NA".

29. Dr. Schottenstein had never wired any money to "Derek Lee" or "DL" or the JPMorgan Chase Bank account associated with them in the past.

30. Derek Lee is a former employee of Dr. Schottenstein's medical practice whose employment was terminated in or about January 2019.

31. Derek Lee was not employed by Dr. Schottenstein at the time of the thefts.

32. Indeed, none of these outgoing wire transfers were consistent with either the identity or location of the payees involved in Plaintiffs' prior wire transfers.

33. The unauthorized wire transfers are part of a much larger and sophisticated criminal enterprise and scheme perpetrated against Dr. Schottenstein by Derek Lee and others, including former employee Pearl Chan.

34. That scheme involves, *inter alia*, unauthorized wires, account transfers (including intra-bank transfers) and credit card charges, creation of fake vendors and fake vendor emails, purposeful mishandling of company checks and other serious criminal misconduct.

35. As of the date hereof, the full extent of the fraud is still unknown to Plaintiffs and is being investigated.

36. Plaintiffs estimate at this time that they were robbed of more than two million dollars.

37. Dr. Douglas Schottenstein, M.D. recently filed a police report regarding the scheme, including the wire transfers out of the Account that are at issue in this case.

38. In late 2020, Dr. Schottenstein learned for the first time of the unauthorized wire transfers from his Account and immediately brought them to the attention of Citibank at a local branch, in-person.

39. At the local Citibank branch, Dr. Schottenstein told Citibank's staff that the wire transfers from his Account were made without his knowledge or authorization and that he did not receive any benefit from them.

40. Dr. Schottenstein further told Citibank at that time that the transfers were not in any way typical and were inconsistent with his history of wiring money from the Account.

41. Dr. Schottenstein was denied assistance from Citibank's staff. Citibank's staff did not offer Dr. Schottenstein the opportunity to submit a fraud report.

42. Citibank refused to provide any written response to Dr. Schottenstein regarding the theft or Dr. Schottenstein's reporting of the theft.

43. Plaintiffs would have reported the fraud sooner, but for reasons unknown, Plaintiffs did not receive the relevant monthly statements from Citibank showing the unauthorized transfers and does not receive regular monthly statements from Citibank regarding the Account as of the date hereof.

44. On February 10, 2021, Dr. Schottenstein sent a dispute letter to Citibank via certified mail regarding the unauthorized wire transfers which, among other things, asked Citibank to investigate the fraud and refund the Account for the unauthorized wire transfers.

45. Citibank received the dispute on February 18, 2021.

46. Citibank has not responded or issued any refund.

### D.     Citibank's Inept Response to the Fraudulent Transfers

47. As of the date hereof, Citibank has not responded to Plaintiffs' dispute letter.

48. At no point prior to, during or after the wire transfers did Citibank contact Plaintiffs to confirm that they were authorized.

49. Citibank never received approval from Dr. Schottenstein for any of the wire transfers. Nonetheless, Citibank allowed the unauthorized wire transfers to be fraudulently effectuated, draining his account of over one million dollars.

50. Rather than immediately reach out to JPMorgan Chase, the bank that had received the funds from the fraudulent wire transfers (and from whom they could have been retrieved if timely action had been taken), Citibank failed to take any action to reverse the unauthorized wire transfers.

### FIRST CLAIM FOR RELIEF
### (New York UCC § 4-A-202 and § 4-A-203)

51. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

52. Pursuant to the New York UCC § 4-A-202(1), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

53. New York UCC § 4-A-202(2) further provides, "[i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (a) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (b) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer."

54. As set forth above, Citibank violated the provisions of New York UCC § 4-A-202 by accepting unauthorized payment orders (i.e., wire transfers) in connection with the Account.

55. As set forth above, Citibank failed to establish, maintain, implement and follow commercially reasonable security procedures and that it accepted the payment in good faith.

56. As set forth above, Citibank's failure to establish, maintain, implement and follow commercially reasonable security procedures directly led to the theft of $1,067,906.04 from Plaintiffs' Account by way of unauthorized wire transfers.

57. As set forth above, Plaintiffs notified Citibank immediately upon discovery of the unauthorized transfers.

58. As set forth above, Citibank failed to confirm authorization for the wire transfers.

59. Nonetheless, Citibank effectuated the transfers.

60. New York UCC § 4-A-204 states that "[i]f a receiving bank accepts a payment order issued in the name of its customer as sender which is (a) not authorized and not effective as the order of the customer under Section 4-A-202, or (b) not enforceable, in whole or in part, against the customer under Section 4-A-203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund."

61. Given the foregoing, Citibank was required to issue a refund to Dr. Schottenstein and to pay interest on the refundable amount.

62. Plaintiffs have notified Citibank regarding the unauthorized transfers and Citibank has refused to issue a refund.

63. By failing to do so, it has violated Article UCC § 4-A.

**WHEREFORE,** Plaintiffs Dr. Douglas Schottenstein, M.D. And Thompson Real Estate, LLC seek judgment in his favor and against Defendant Citibank, N.A. in the amount of $1,067,906.04, interest calculated from the dates of the transfers, punitive damages, reasonable attorneys' fees and costs and such other and further relief as may be necessary, just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

Dated:  March 25, 2021

>  */s/Daniel A. Schlanger*
>  Daniel A. Schlanger
>  Schlanger Law Group LLP
>  80 Broad Street, Suite 1301
>  New York, NY 10004
>  T: 212-500-6114

F: 646-612-7996
E: dschlanger@consumerprotection.net

*/s/ Richard Rosenthal*
Richard Bruce Rosenthal
Federal Bar No. rb1834
545 E. Jericho Turnpike
Huntington Station, NY 11746
Tel: (631) 629-8111
Cell: (516) 319-0816
Fax: (631) 691-8789
richard@thedoglawyer.com

*Counsel for Plaintiffs*